Gregory J. LEFTWITCH, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1539.

District of Columbia Court of Appeals.

Submitted Feb. 1, 1983.

Decided April 22, 1983.

Martin S. Echter, Washington, D.C., appointed by the court, was on the brief for appellant.

Stanley S. Harris, U.S. Atty., Michael W. Farrell, John R. Fisher, Constance L. Belfiore, and E. Anne McKinsey, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before MACK and PRYOR, Associate Judges, and KELLY,* Associate Judge, Retired.

PER CURIAM:

Following a jury trial, appellant was convicted of armed robbery (D.C.Code §§ 22–2901, –3202 (1981)), and assault with a dangerous weapon (D.C.Code § 22–502 (1981)). Appellant raises three issues on appeal: 1) whether the trial court erred by failing to give a "missing witness instruction" as requested by defense counsel; 2) whether the trial court abused its discretion or impermissibly curtailed cross-examination of a witness when it denied defense counsel's request for a recess so he could go to the bathroom; and 3) whether the trial court erred in sentencing appellant to consecutive terms of incarceration following his convictions of robbery while armed and assault with a dangerous weapon when the two charges arose from the same transaction. We affirm the conviction of armed robbery and reverse the conviction and vacate the sentence for assault with a dangerous weapon.

Returning home from a party, complainant-Harvey Scott, David Knight (Scott's brother), and two women—Jackie and Josephine—were searching for a cab. They met appellant who was with several other men. Appellant and Scott were acquaintances and a conversation ensued. Appellant and his friends offered Jackie a ride home but Scott, believing Jackie to be intoxicated and vulnerable to a group of strange men, objected and insisted that she remain with him. An argument between Scott and appellant followed during which appellant produced a knife. Mr. Knight intervened, however, and matters were quieted. Thinking the conflict settled, Knight and Josephine went into a nearby grocery store to buy cigarettes. During the argument and its apparent resolution, Jackie had gotten into the automobile with appellant's friends. Scott went over to the car and as he attempted to pull her from the automobile, appellant demanded the radio that Scott was carrying and snatched it from him. Scott protested that the radio belonged to his brother and took it back. Appellant produced a knife, stabbed Scott in the chest, seized the radio and fled the scene with his friends. Knight came out of the grocery store, found Scott bleeding from his wound, and called for an ambulance and the police. Appellant was indicted for assault with intent to kill while armed and robbery while armed.

In its jury charge, the court gave an instruction on assault with a dangerous weapon as a lesser-included offense of assault with intent to kill while armed.[1] Ap-

---

* Judge Kelly was an Associate Judge of the court at the time the case was submitted. Her status changed to Associate Judge, Retired, on March 31, 1983.

1. The court stated:

   Now, that second count is assault with intent to kill. As I say, the second element required is specific intent. I want to further instruct you there is a lesser included offense which I want you to consider in the event that you would find specific intent lacking and that is, the assault with a dangerous weapon.

   The essential elements of the offense of assault with a dangerous weapon, each of which the Government must prove beyond a reasonable doubt, are three:

   One, that the defendant committed an assault upon the complainant.

   Secondly, that he did so with a dangerous weapon. And, third, that at the time of the commission of the assault, he intended to do the acts which constituted the assault. This

pellant's request for a missing witness instruction as to Jackie and Josephine was denied.

Appellant was convicted of robbery while armed and assault with a dangerous weapon and received consecutive sentences of three to nine years and two to six years imprisonment respectively. This appeal followed.

## I

■■■ A missing witness instruction is appropriately given upon a showing that a witness is peculiarly available to one of the parties and that the witness' testimony is likely to elucidate the transaction at issue in the case. *Cooper v. United States,* 415 A.2d 528, 533 (D.C.1980). The decision to give such an instruction is committed to the sound discretion of the trial court and we will reverse on appeal only on finding an abuse of that discretion. *Simmons v. United States,* 444 A.2d 962, 964 (D.C.1982).

■■■ The record is void of any support for finding either that the witnesses were peculiarly available to the government or that the witnesses would have elucidated the events surrounding the offense. The trial

is just a general intent crime where the other one, the assault with intent to kill, required the specific intent to kill.

2. At the close of direct examination of Mr. Scott, defense counsel requested *Jencks* material and the prosecutor turned over the documents both for witness Scott and Mr. Knight. Defense counsel requested a few minutes to review the material and the following colloquy ensued:

COURT: [Counsel], come to the bench.
COURT: You're only entitled to look at the stuff that applied to him. That's all you're entitled to right now. You were looking at some of the Grand Jury testimony.
[ASS'T U.S. ATTORNEY]: All he's got is Grand Jury testimony.
[COUNSEL]: That's all I have. That's all I'm looking at. I'm sorry, Your Honor, but I don't think so.
COURT: Are you near finished?
[COUNSEL]: Well, I'm sorry, Judge.
COURT: You were looking at some other stuff.
[COUNSEL]: I'm sorry, Judge, but I don't think so.
COURT: Well, you're wasting a lot of time.

court, therefore, did not abuse its discretion in failing to give the requested instruction.

## II

During the cross-examination of complainant, defense counsel requested to approach the bench and explained he had to use the bathroom. The following dialogue ensued:

[DEFENSE COUNSEL]: ... I simply have to go to the bathroom I cannot do anything about it.
COURT: Well, you're the one that sat there and took 15 minutes to read 15 pages. I think you're stalling, frankly.[2]
[COUNSEL]: No, sir I'm not stalling.
COURT: If the rest of your cross-examination is as meaningful as this, I think you have no further cross-examination and I'm going to send this jury to lunch.
[COUNSEL]: Your Honor, it's very hard to concentrate right now.
COURT: That's tough. You're paid to be a professional. Do you have any other questions?
[COUNSEL]: Yes sir, I do have other questions but I need to go to the bathroom.

[COUNSEL]: I'm sorry, Judge.
COURT: All right.
COURT: [Counsel], you've taken about ten minutes, I think we ought to proceed.
[COUNSEL]: I apologize, Your Honor.
COURT: All right. Come to the bench. [Ass't U.S. Attorney], bring your copy of the Grand Jury testimony, will you.
[ASS'T U.S. ATTORNEY]: Your Honor, the pagination is on the first page or the second page.
COURT: I think you took an inordinate length of time to read this, 15 minutes to read 15 pages of transcript. I suspect you were reading other matters that I told you not to do. You've delayed me and these jurors. I don't like your trifling with me. When she put the thing here, you walked around her. You didn't ask my permission. I run this court. Don't ever act to the contrary. I don't know how they do it in other courts, but you ask for permission before you do things in my court.

Don't trifle with me again because I take it seriously. You go ahead with your cross-examination.

COURT: What are the other questions?

[COUNSEL]: I want to inquire as to his preparation for trial in terms of Grand Jury testimony and in terms of reading the Grand Jury testimony because his testimony was almost verbatim of what he said.

I want to inquire further into his association with [appellant].

COURT: You've been into that and all that is irrelevant and immaterial to this testimony.

[ASS'T U.S. ATTORNEY]: Number one, I'll just say that I wouldn't mind waiting, but I really wouldn't want the cross-examination to pick up after lunch. I wouldn't mind waiting, but, secondly, Grand Jury testimony is only given to impeach. He can't use it for any other purpose. Unless he can impeach him, I would object to any questions along that line.

COURT: Unless you have some other meaningful questions you can suggest to me, I'm going to stay and do the testimony.

[COUNSEL]: I understand that you're limiting my testimony and refusing to allow—

COURT: The proffer you made has been immaterial. If you want to question, you can go ahead, but I think you're stalling. You've been stalling all along.

So, do you have any other questions you want to ask right now?

[COUNSEL]: Most respectfully, sir, I do, but I am unable to ask them.

COURT: Let the record show it is now 12:35. This man, at 12:10, he took 15 minutes to read 15 pages of transcript. I'm going to excuse the witness unless you want to question him now.

[COUNSEL]: I am unable to go forward at this time.

Appellant asserts the trial court's refusal to allow a brief recess was an abuse of discretion or impermissibly curtailed cross-examination in violation of the Sixth Amendment confrontation right.

The scope of cross-examination is generally committed to the sound discretion of the trial court, *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931). This court will disturb such a ruling only upon a showing of abuse of discretion. *Springer v. United States,* 388 A.2d 846, 856 (D.C.1978). Because the court's ruling, based on defense counsel's proffer on the subjects of further cross-examination, cannot be said to constitute an abuse of discretion and because we find no Sixth Amendment violation, we affirm on this issue. We note, however, that a five minute recess would have imposed a minimal burden on the court.

## III

Appellant was convicted of robbery while armed, acquitted of the charge of assault with intent to kill while armed yet convicted of the lesser-included offense of assault with a dangerous weapon. He was sentenced to imprisonment for three to nine years for robbery while armed and two to six years for assault with a dangerous weapon, such sentences to be served consecutively. Appellant claims that the two offenses of which he was convicted merged; that the imposition of consecutive sentences was, therefore, illegal; and that his conviction of and sentence for the lesser-included offense of assault with a dangerous weapon should be vacated.

In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court stated:

The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

This rule of statutory construction assumes that the legislature ordinarily does not intend to punish the same offense under two different statutes. Therefore, "where two statutory provisions proscribe the 'same offense,' they are construed not to authorize

cumulative punishments in the absence of a clear indication of contrary legislative intent." *Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980). *See also Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981).

■ In the District of Columbia, assault with a dangerous weapon is a lesser-included offense of robbery while armed and the two offenses merge when they both arise out of the same act of the defendant, *Quick v. United States,* 316 A.2d 875, 876 (D.C. 1974); we find no "clear indication of contrary legislative intent."

■ Therefore, we apply the *Blockburger* test and find the charges in this case all arise out of the same transaction; that the offense of assault with intent to kill while armed merges with assault with a dangerous weapon; and the offense of robbery while armed merges with assault with a dangerous weapon.[3]

Thus the trial court correctly instructed the jury that it could not convict appellant of both assault with intent to kill while armed and of the lesser-included offense of assault with a dangerous weapon. Yet the court failed to apply the same principle of merger to the offense of robbery while armed and the lesser-included offense of assault with a dangerous weapon but entered judgments and sentences for both offenses. Because the doctrine of merger of these two offenses applies to the facts of this case, we reverse the conviction of assault with a dangerous weapon and vacate that sentence.

We order that the appellant's conviction of robbery while armed be affirmed and his conviction of assault with a dangerous weapon be reversed and that sentence vacated.

*So ordered.*

Associate Judge, Retired, KELLY concurs in the result.

---

**3.** Assault with a dangerous weapon is a lesser-included offense of both robbery while armed, *United States v. Toy,* 157 U.S.App.D.C. 152, 154–55, 482 F.2d 741, 743–44 (1973), and of assault with intent to kill while armed, *Ingram v. United States,* 122 U.S.App.D.C. 334, 337, 353 F.2d 872, 875 (1965).