# District of Columbia
# Court of Appeals

No. 14-FS-0772

IN RE: Z.B.,



FEB - 4 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

DEL-52-14

Appellant.

On Appeal from the Superior Court
of the District of Columbia

BEFORE: Fisher and Blackburne-Rigsby, Associate Judges; and Pryor, Senior Judge .

## J U D G M E N T

This case came to be heard on the transcript of record, the briefs filed, and was argued by counsel. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the case is remanded to merge appellant's conviction of receiving stolen property ("RSP") with robbery, as noted by the trial court. In all other respects, the judgment on appeal is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: February 4, 2016.

Opinion by Senior Judge William C. Pryor.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-FS-0772

IN RE Z.B., APPELLANT.

FILED 2/4/16
District of Columbia
Court of Appeals
*Julio Castillo*
Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(DEL-52-14)

(Hon. Florence Y. Pan, Trial Judge)

(Argued November 12, 2015      Decided February 4, 2016)

*William C. Collins*, Public Defender Service, with whom *Christine A. Monta*, *James Klein*, *Samia Fam*, and *Jaclyn S. Frankfurt*, were on the brief, for appellant.

*John J. Woykovsky*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Rosalyn Calbert Groce*, Deputy Solicitor General, were on the brief, for appellee.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and PRYOR, *Senior Judge*.

PRYOR, *Senior Judge*: Appellant was adjudicated involved with robbery, D.C. Code § 22-2801 (2012 Repl.); receiving stolen property ("RSP"), D.C. Code § 22-3232 (2012 Repl.); and two counts of misdemeanor threats to do bodily harm, D.C. Code § 22-407 (2012 Repl.). He contends on appeal that police officers lacked reasonable articulable suspicion to seize him to conduct a show-up identification, and thus all resulting evidence from the seizure should be

suppressed. Further, he argues threats should merge with robbery. After reviewing the record, we conclude that the judge did not err in denying the suppression motion and the offenses do not merge. We remand to merge RSP with robbery as noted by the trial court, but affirm in all other respects.[1]

## I.

Appellant, age fourteen, along with two other teenagers, approached another teenager and demanded his cell phone. Appellant told the complaining witness that he would break his jaw if he continued to yell out for help from passersby, and he said he would pull a "strap," which complainant understood to be a gun. After handing over his cell phone, the complaining witness ran away, flagged down an officer, and provided a description of the suspects.

There was an initial radio broadcast for "three young black males" and another more detailed description two minutes later. The second radio broadcast was for a seventeen-year-old black male, 6′2″, wearing a black jacket and blue

---

[1] The trial judge noted that RSP merges with robbery at the completion of his appeal, and the government agrees.

gloves, and stated his last known location. The broadcast did not mention that a cell phone had been stolen. Two officers heard the description and saw appellant, within a few minutes, standing on the street approximately two blocks away from the incident. Appellant placed the cell phone in his pocket after seeing the officers. He was shorter in height, wearing a black jacket, a black ski mask in which his face was exposed, and displayed one aqua and blue glove on his hand. The officers stopped him, radioed to the officer who was with the complaining witness, and the witness was transported for a show-up identification. Upon positive identification,[2] he was placed under arrest, and spontaneously asked, "How you going to say I robbed somebody?" A subsequent search revealed the stolen cell phone.

During trial there was a motion to suppress the identification, appellant's volunteered question, and the cell phone on the basis that appellant's seizure was invalid. The judge found that appellant matched the description in all pertinent aspects except being shorter in height. Based on the totality of the circumstances

---

[2] Appellant, at the time of identification, was wearing an open-faced ski mask.

the trial judge denied the motion and found appellant involved with robbery, RSP, and two counts of misdemeanor threats.  Appellant filed this timely appeal.

## II.

### A.     *Reasonable Suspicion to Seize Appellant*

Officers may seize an individual to conduct an investigatory stop if, in the totality of the circumstances, they have particularized and objectively reasonable articulable suspicion that criminal activity is afoot.  *See generally Terry v. Ohio*, 392 U.S. 1 (1968).  The officer must be able to provide "specific and articulable facts" to justify the Fourth Amendment intrusion.  *See Curtis v. United States*, 349 A.2d 469, 471 (D.C. 1975) (citation omitted).  The government's burden, however, "is not an onerous one" because "articulable suspicion is substantially less than probable cause . . . ."  *In re T.L.L.*, 729 A.2d 334, 339 (D.C. 1994) (citations omitted).  "[A]n imperfect description, coupled with close spatial and temporal proximity between the reported crime and seizure, justifies a *Terry* stop."  *United States v. Turner*, 699 A.2d 1125, 1129 (D.C. 1997) (summarizing cases of twenty-five seconds to "minutes" between description and stop) (citations omitted).

Our review is limited on an appeal concerning the denial of a motion to suppress evidence. *Brown v. United States*, 590 A.2d 1008, 1020 (D.C. 1991). "[W]e will not disturb the trial judge's findings of fact unless they lack evidentiary support in the record . . . . The evidence, and all reasonable inferences from the evidence, must be viewed in the light most favorable to the District, as the party that prevailed below." *In re T.L.L.*, *supra*, 729 A.2d at 339 (citing *Peay v. United States*, 597 A.2d 1318, 1320 (D.C. 1991) (en banc); *Ruffin v. United States*, 642 A.2d 1288, 1291 (D.C. 1994)). We apply the clearly erroneous standard to the judge's findings of fact, but the ultimate conclusion on whether the police had reasonable articulable suspicion is a question of law we decide de novo. *Brown*, *supra*, 590 A.2d at 1020.

Appellant contends that the initial descriptions of the robber given by the complainant were markedly inaccurate and therefore deficient. Nonetheless, appellant fit the general description given as to the age, ethnicity, ski clothing, and glove. Further, appellant was observed by the officers just two blocks from the robbery scene a few minutes later. Applying the familiar *Terry* measure of total circumstances, we conclude that the evidence supports the trial judge's finding of reasonable articulable suspicion of criminal activity afoot to justify a temporary

stop. *See Turner*, *supra*, 699 A.2d at 1128-29 (discussing that an imperfect description "coupled with close spatial and temporal proximity between the reported crime and seizure, justifies a *Terry* stop"). Thereafter, the complaining witness' positive identification of appellant at the show-up gave police probable cause to arrest. *See generally Oxner v. United States*, 995 A.2d 205, 209 (D.C. 2010).

### B. Merger of Threats With Robbery

Appellant also contends that the threats alleged in this instance were a part of the robbery and were included in that offense. Even after applying the test enunciated in *Blockburger v. United States*, 284 U.S. 299 (1932), appellant argues that we should conclude that the legislative intent was to include threats as a component of robbery.

The Double Jeopardy Clause of the Fifth Amendment "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). We review merger issues de novo. *Robinson v. United States*, 50 A.3d 508, 532 (D.C. 2012). To determine legislative intent regarding merger, we have stated in *Simms v. United States*, 634 A.2d 443, 446-47 (D.C. 1993), "The test

to be applied in assessing whether convictions merge for double jeopardy purposes turns on the statutory elements of a particular violation rather than the evidence adduced at trial." (citation omitted); *see* D.C. Code § 23-112 (2012 Repl.).

In *Byrd v. United States*, 598 A.2d 386 (D.C. 1991) (en banc) we reaffirmed the application of *Blockburger*. *Id.* at 390 ("We do not think the pure fact-based analysis . . . can survive the recent affirmation by the Supreme Court . . . ."). If offenses violate two distinct statutory provisions we consider whether each requires proof of an element that the other does not. *Id.* at 389. We do not merge the offenses if each offense has an element that the other does not. *Norris v. United States*, 585 A.2d 1372, 1374 (D.C. 1991). Clearly a greater offense will include a lesser offense. In such a situation, the lesser-included offense contains the same elements as the greater offense, but the greater offense has at least one additional element.

With regard to robbery, D.C. Code § 22-2801 provides:

> Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value. . . .

D.C. Code § 22-407 provides that threats to do bodily harm is a misdemeanor offense.  We have defined the offense as follows:

> (1)  The defendant uttered words to another person;
>
> (2)  . . . of such a nature as to convey fear of bodily harm or injury to the ordinary hearer; and
>
> (3)  . . . defendant intended to utter the words . . . .

*Joiner-Die v. United States*, 899 A.2d 762, 764 (D.C. 2006).  Thus as we concluded in *Joiner-Die*, robbery requires offensive *conduct* to obtain something of value from a person, whereas threats requires a menacing *communication* or *utterance* to a person.  Thus there is no merger of offenses.  *See Joiner-Die*, 899 A.2d at 767.

Moreover, in *Kaliku v. United States*, 944 A.2d 765 (D.C. 2010) we declined to merge threats with kidnapping because the "coincidental[] overlap" of one offense during the commission of another offense "cannot be imputed as an inherent element of the crime," *id.* at 788.  Robbery essentially requires that the government prove larceny and assault.  *Williams v. United States*, 113 A.3d 554, 560 (D.C. 2015).  Thus, it is not possible to commit robbery without also

committing assault, and assault accordingly merges as a lesser-included offense. *See Norris*, *supra*, 585 A.2d at 1374. However, it *is* possible to commit a robbery without committing verbal threats—that is, through the use of violence or conduct that puts one in fear.

Appellant's rub, however, is not that the offenses should merge under *Blockburger*, as he concedes they do not, but that the offenses should merge because of the presumption that the legislature acts rationally and logically in crafting its statutes to prevent "absurd results." *See Haney v. United States*, 473 A.2d 393, 394 (D.C. 1984) (citation omitted). "The courts are to construe statutes in a manner which assumes that [the legislature] has acted logically and rationally." *Id.* at 395 (citation omitted). This presumption functions as a safety valve to the issue of merger. *See Thomas v. United States*, 602 A.2d 647, 650 (D.C. 1992) (declining to merge when it would "produce absurd results"). Thus, appellant argues the "absurd result" is punishing someone who uses threats to effectuate a robbery more severely than someone who commits an assault to effectuate a robbery. This argument misses the mark because it fails to appreciate that someone who commits a robbery necessarily commits an assault, and the additional punishment here is because he not only committed an assault but also committed threats.

For the foregoing reasons, we affirm the trial court's suppression ruling and deny merging threats with robbery.

*So ordered.*